487 So.2d 1083 (1986)
STATE of Florida, Appellant,
v.
Celestino DELAFUENTE, Appellee.
No. 84-2231.
District Court of Appeal of Florida, Fourth District.
March 19, 1986.
Rehearing Denied May 29, 1986.
Jim Smith, Atty. Gen., Tallahassee, and Robert S. Jaegers, Asst. Atty. Gen., West Palm Beach, for appellant.
Harry Gulkin, of Harry Gulkin, P.A., Hollywood, for appellee.
GLICKSTEIN, Judge.
We reverse the trial court's order, granting the defendant a new trial because of alleged prosecutorial misconduct. In doing so, we recognize that a stronger showing must be made in upsetting such an order than in overturning an order of denial *1084 of a new trial. Castlewood International Corporation v. LaFleur, 322 So.2d 520 (Fla. 1975); State v. Prieto, 439 So.2d 288 (Fla. 3d DCA 1983).
The alleged misconduct of the prosecutor was in commenting, at closing argument, upon the defendant's failure to call a person known as "J.P.," a confidential informant.
Appellee was tried with another defendant, Alexander Bucknor, and found guilty of trafficking in cocaine. The two had been charged along with two other defendants, Oscar Henao, who had not been apprehended, and Howard Davis, who testified at the trial after entering a plea. Throughout the trial, J.P.'s name was bandied about by several witnesses either on direct or cross-examination. He was discussed by appellee's counsel, who closed first after the testimony was concluded, saying:
Well, you heard Tino [Appellee Celestino Delafuente] tell you that when he left Denny's on February 10th, he went with J.P., the paid confidential informant, the guy who sets up people, over to Tino's car.
* * * * * *
This is not a case where Tino Delafuente and Buckie, Alexander Bucknor, are involved in cocaine, where they are investigated. They are brought into a situation by a guy who's getting paid to find people who can deal in cocaine. That's what you have in Broward County.
* * * * * *
J.P., James Pointer, the C.I., do you remember when Damiano looked at the Court when I said, who was J.P.? He didn't know if he should say the name. They protect these people. They protect them. They pay them, go on, set up people. That's what we have. That's what we have. I talked to you. I said, we're not going to be naive. We read about it. Is this the face the man  Either of these men, is this what you read about? They got suckered in. They got suckered in. He's going to go to the police. The prosecutor says, why didn't you go to the police, Mr. Delafuente? The police set it up for God's sake, what are they going to do? Are they going to arrest Brennan? Are they going to arrest J.P.? Are they going to arrest Damiano?
* * * * * *
You heard from a lot of people. You didn't hear from a lot of people. You didn't hear from people who were around the area. We don't know where Oscar Henao is, but we know that cocaine was in Henao's trunk. We know it was Henao who opened the trunk. We know that. We know that Tino never saw money, never saw the cocaine. He walked the other way. Is that delivery? Who delivered it? Tino was standing with J.P. by Tino's car. Oscar was in the car. He brings it in the car. How can he be convicted of delivery? The Judge will instruct you about delivery, and a talk about the actual constructive or attempted transfer.
Where did Tino attempt to deliver? He wasn't physically there. That's why I asked about the distance. It would be one thing if he was walking over there and helping some way. What did he do? He walked to his car and what did he say, he said to J.P., just let me out of this whole thing. I have made that introduction.
* * * * * *
They were out of this thing and it wasn't until Tino sees J.P. and J.P. takes the shotgun shells. That's not rebutted. You haven't heard anything to contradict that. You didn't hear J.P. say, I didn't do that. He got frightened, and why didn't he tell Buckie about it? Because Buckie was in Jamaica. This was after. This was after he took Buckie to the airport. Don't be confused. Look for those kind of subtleties. Sequence of time is very important.
The State Attorney then presented his closing argument. He recounted the testimony and the evidence presented and then stated:
Mr. Gulkin [appellee's defense counsel] had mentioned J.P. He knows who J.P. *1085 is and he has just as much an opportunity to call him as a witness as I did. So I don't think it's quite fair to speculate too much about J.P.J.P. is alleged to be the confidential paid informant. Probably none of us likes the idea of confidential paid informants, but it's necessary in law enforcement, especially in the enforcement of this State's drug laws. Tough drug laws, tough business.
The State made no other mention of J.P.
Defense counsel for appellee's codefendant, in his closing argument, then made additional remarks concerning J.P.
Mr. Gulkin, appellee's defense counsel, then made his final closing argument, in which he stated:
That man sitting there, the 58-year-old man, a trucker, he wants you, he, the prosecutor, wants you to fit into one of the four categories, a cocaine dealer, a dope pusher. He has you  He's asking you to believe Brennan was merely making himself available. The prosecutor said to you Brennan, the man who's posing as a buyer, flashing the money, is merely making himself available. You know that that's not true. You know that because of the tapes that the defendant introduced. Brennan was pushing and pushing. Keep it in it's perspective.
J.P., why didn't we call him? That's the flip-flop. The burden of proof is not on us. We talked about it to the point, a few days ago, that you probably got sick of it, but you can see now how through words you're asked to put some additional burden on us that we should not legally and we do not legally have. So you must forget about the things that tried to tip the scale and put us under... .
The defense counsel continued with additional comments about J.P. Appellee's counsel also stated:
This is not a debate. The person who is the better talker should not win. The prosecutor, Mr. Smith, myself, we walk out of the court room. We're not on trial. The Judge will tell you, the lawyers are not on trial. We weren't there. The lawyers were not there. J.P. was there and yet they want us to bring him in. That's what is somewhat perverted in this case. The play acting, the role acting, the people posing as different things to create the criminal act.
Appellee's counsel immediately thereafter concluded his final argument.
In our view, the order should be reversed for at least two reasons. First, there is no fundamental error involved here especially in light of defense counsel's first mention of the jury's not hearing from a lot of people who were around the area and their not hearing J.P. say anything to contradict or rebut a point being made by the defense. At no time did defense counsel object to the state's argument or move for a mistrial. The trial court, for that reason alone, should have denied the motion for new trial, in the absence of fundamental error. State v. Prieto, 439 So.2d 288 (Fla. 3d DCA 1983).
Further, in light of the overwhelming evidence against appellee, including the tape recordings of appellee's participation in the crime, any alleged error was harmless. See Lane v. State, 352 So.2d 1237 (Fla. 1st DCA 1977); State v. Woodson, 330 So.2d 152 (Fla. 4th DCA 1976).
DOWNEY and DELL, JJ., concur.